IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DARRELL L. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:14-CV-00027 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Darrell L. Smith ("Smith") challenges the decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] See 42 U.S.C. §§ 401–433. Smith alleges that the Administrative Law Judge ("ALJ") erroneously weighed the opinions of three medical sources and improperly discounted his credibility. I find that substantial evidence supports the ALJ's decision. Accordingly, I **DENY** Smith's Motion for Summary Judgment (Dkt. No. 12), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 15.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Smith failed to demonstrate that he was disabled under the

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[2] Smith also applied for supplemental security income ("SSI") that was denied on August 23, 2011. R. 68-78, 170-81. Smith did not appeal the denial. See generally R. 79-91.

1

Act.[3] See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Smith filed for DIB on March 8, 2011, alleging that his disability began on October 1, 2010. R. 163–69. Smith remained insured through December 31, 2013. R. 59. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 58–67, 79–91. On April 24, 2013, ALJ Marc Mates held a hearing to consider Smith's disability claim. R. 35–56. Smith was represented by an attorney at the hearing, which included testimony from Smith and vocational expert Gerald Wells, Ph.D. Id.

On May 10, 2013, the ALJ entered his decision analyzing Smith's claim under the familiar five-step process[4] and denying Smith's claim for benefits. R. 17–34. The ALJ found that

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Smith suffered from the severe impairments of degenerative disc disease ("DDD") and muscle strain. R. 22. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22–23. The ALJ decided that Smith retained the RFC[5] to perform sedentary work, and specifically that Smith:

> is able to lift 20 pounds occasionally and 10 pounds frequently, but stand/walk about two hours total and sit about six hours total during an eight-hour workday. He is able to occasionally push/pull with his lower extremities, cannot climb ladders, ropes, or scaffolds, but can perform other postural activities, like balancing and stooping, occasionally. The claimant must also avoid concentrated exposure to temperature extremes, vibration, and hazards.

R. 23. The ALJ determined that Smith could not return to his past relevant work as a mill worker, maintenance/fork lift operator, or van driver (R. 28), but that Smith could work at jobs that exist in significant numbers in the national economy, such as addresser, appointment clerk, and order clerk. R. 29. Thus, the ALJ concluded that Smith was not disabled. R. 29–30. On June 16, 2014, the Appeals Council denied Smith's request for review (R. 1–7), and this appeal followed.

## **ANALYSIS**

Smith's appeal focuses solely on his degenerative disc disease. He alleges that the ALJ failed to provide adequate reasons for the weight assigned to the opinions of the medical sources. Smith further claims that the ALJ improperly discounted his credibility and pain complaints. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision.

---

[5]An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. See 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. See id.

3

## Assigned Weights to Medical Opinions

Smith argues that the ALJ improperly weighed the opinions of treating physician George Wortley, M.D., consultative examiner David Boone, D.O., and non-examining state agency physician Richard Surrusco, M.D. The ALJ gave no weight to Dr. Wortley's conclusions because his assessment was "fairly extreme" and was "inadequately supported and inconsistent with the weight of the evidence of record as a whole." R 28. The ALJ accorded partial weight to Dr. Boone's opinion "to the extent it is consistent with (and supportive of) the above residual functional capacity assessment." R. 28. The ALJ gave considerable weight to both state agency physicians' opinions, including Dr. Surrusco, because the opinions "reflect a thorough review of the record and are supportable." R. 28. Smith contends that the ALJ should have provided greater weight to Drs. Wortley's and Boone's opinions and less weight to Dr. Surrusco's opinion.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Under 20 CFR §§ 404.1527(c)(1) and 404.1527(c)(2), the opinion of a consultative examining source generally receives greater weight than a non-examining source. Medical specialists who have examined a claimant normally are accorded more weight than a general medical examiner. See Taylor v. Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sept. 4, 2014). In evaluating the weight to give a medical opinion, the ALJ must consider various factors, including the explanation and support for the opinion, as well as its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c). "If the RFC assessment conflicts with an opinion from a

4

medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96–8p, 1996 WL 374184, *7 (July 2, 1996)).[6] The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

At the time Smith applied for social security benefits, the pain questionnaire he completed described his pain as "aching," "stabbing," "burning," and "throbbing" in his lower back which radiated to his shoulder and through his leg. R. 231. Smith claimed that the constant pain moves throughout his body and occurs during many activities, and that he cannot stay in one position too long. R. 231, 234. Smith explained that while he was working, he drove for his work for about an hour at a time on good days and had the flexibility to stand in between jobs; however, he had not been able to work for a few months at the time of writing his pain questionnaire.[7] R. 241. Smith wrote in his function report that he no longer could perform many activities and chores and required assistance from his wife to go to doctors' appointments and to bathe. R. 257–61. He also noted he used a brace daily and a cane outside of the house. R. 279.

Drs. Wortley, Boone and Surrusco reviewed Smith's history of degenerative disc disease ("DDD") and generalized back pain. The administrative record shows that Smith received relatively inconsistent and conservative treatment for DDD since early 2010, and does not include the severe levels of treatment or recommendations for treatment expected of a claimant with disabling DDD. On January 12, 2010, Smith reported to the emergency room at Bedford Memorial Hospital with complaints of back and hip pain. A physical examination showed mild

---

[6] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

[7] Smith also noted depression resulting from his back pain (R. 245-46, 263, 282), but does not appear to contest his mental health challenges in this appeal.

5

tenderness and pain on the right paraspinous muscles at L2 and L4. An imaging study revealed "narrowing of the interverebtral disc space height at L5-S1 with some mild sclerosis in the adjacent endplates… [and] some mild degenerative change at the thoracolumbar junction." R. 308–12. The examining physician diagnosed a "lumbar sprain, sciatica, radiculopathy, herniated disc.". R. 321–22. On January 12, 2010, Smith received a single treatment for hip and leg pain at LaBarbera Family Chiropractic. R. 325–29. There is no evidence that Smith pursued additional chiropractic treatment, and no indication whether the single treatment was successful.

Smith's family physician, Dr. Wortley, first examined Smith for back pain on September 15, 2011, diagnosing Smith with back pain and muscle spasms and noting Smith's uncomfortable appearance and abnormal posture, gait, ability to rotate, bend, and change positions. R. 353–55. A lumbar MRI taken on October 12, 2011 revealed a diagnosis of mild multilevel DDD with facet hypertrophy, no severe canal narrowing, but multiple levels of neural foraminal narrowing. The MRI also showed a minimal old wedge compression fracture at L1 with a superior endplate Schmorl's node, and hemangioma in L2. R. 349. Neurosurgeon Morris E. McCrary, III, M.D. evaluated Smith for his back pain and resulting numbness in his hands, arms, and legs on November 2, 2011. R. 356–58. Dr. McCrary concluded that Smith's symptoms suggested primarily mechanical back pain in the vascular lumbar region and found no evidence of radiculopathy or myelopathy. Id. He determined that a thoracic lesion could be possible as well. Dr. McCrary did not recommend surgical intervention, and recommended conservative measures including facet injections, physical therapy, or chiropractic modalities. Id.

Smith returned to Dr. Wortley on January 9, 2012. The physical examination revealed an abnormal gait, lumbar spine tenderness, and a mildly positive straight leg raise on the left. R. 383–84. Dr. Wortley recommended trigger point injections and continued medication for his pain. R. 384. Smith did not return to Dr. Wortley for treatment until August 17, 2012, with

6

reports of back pain and resulting radiating pain; Dr. Wortley noted Smith responded to trigger point injections for several days and that a physical examination showed an abnormal gait and tenderness in the thoracic and lumbar spine. R. 381–82. Dr. Wortley injected trigger points and continued Smith on medication. R. 381.

State agency physician Robert Keeley, M.D., reviewed Smith's records on July 29, 2011 and determined that Smith suffered from DDD but could lift twenty pounds occasionally and ten pounds frequently, stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday, along with other postural and environmental limitations. R. 63–65.

Smith contests the ALJ's evaluation of Dr. Wortley's opinion. Dr. Wortley completed a physical RFC questionnaire on April 12, 2013. R. 376–80. He diagnosed Smith with back pain of a "9/10" intensity level that was worse when sitting, caused muscle spasms, and improved little with medication. R. 376. Dr. Wortley determined that Smith can only sit for ten minutes at a time, can stand for more than two hours at one time, can sit less than two hours in an eight-hour day, can stand or walk for four hours in an eight-hour day, and needs to walk at least fifteen minutes for two-minutes at a time in an eight-hour day. R. 377–78. Dr. Wortley also determined that Smith needed a job that permitted shifting positions at will from sitting, standing, or walking and needed unscheduled breaks about every thirty minutes for five to ten minutes prior to returning to work. R. 378. He also found that Smith did not need a cane, rarely could lift ten pounds, and never could lift more than ten pounds. R. 378. Dr. Wortley provided some limitations for twisting, turning, bending, reaching, and handling, including limiting hand and finger usage to thirty-percent of the day. R. 379.

Dr. Wortley completed a second RFC questionnaire on August 13, 2013 which was submitted after the ALJ's decision, giving essentially the same opinion, except that Smith can perform moderate stress work, stand twenty minutes at one time, can sit about two hours per day,

7

must walk at least ten minutes every ten minutes in an eight-hour workday, must take five minute breaks every fifteen to twenty minutes, and rarely can lift less than ten pounds and never lift more than ten pounds. R. 392–94. Dr. Wortley concluded Smith can only sit for ten minutes at a time and stand for twenty minutes at a time, grasp and twist with his hands at five percent of the day, use his fingers to manipulate between five and ten percent of the day, and never reach with his arms. R. 392–96. Dr. Wortley again found postural limitations. R. 395.

Substantial evidence supports the ALJ's findings that Dr. Wortley's opinion is fairly extreme and "inadequately supported and inconsistent with the weight of the evidence of record as a whole." R 28. Dr. Wortley's treatment records show generally conservative treatment, no consideration of extensive invasive treatment options, and no examinations suggesting that Smith had the extreme functional limitations outlined in Wortley's opinions. Smith attacks the ALJ's opinion as not providing further explanation as to why he believes Dr. Wortley's opinion to be extreme; however, Dr. Wortley's treatment records do not include any information supporting the level of disability alleged in his RFC questionnaires. The burden is on Smith to point to treatment notes in the record supporting Dr. Wortley's broad sweeping recommended functional limitations, and he simply has not done so. Smith's spinal examinations show some abnormalities, but not to the point of being disabling. The other medical opinions in the record do not recommended functional limitations similar to Dr. Wortley's conclusions. Smith correctly notes that Dr. Wortley's opinion is less restrictive in part than the RFC. However, the fact that a portion of Dr. Wortley's functional limitations were less restrictive than the RFC does not change the fact that the rest of Dr. Wortley's opinions are unsupported by the record. The ALJ's opinion could have benefited from a more detailed explanation for the weight assigned to Dr. Wortley's opinion, but it was not necessary given the overwhelmingly conservative treatment in the record.

8

Smith also contests the ALJ's decision not to accept Dr. Boone's opinion about necessary breaks from work. Dr. Boone examined Smith for low and mid back pain on July 11, 2011. R. 335–39. Smith reported pain of about "5-6/10" and reported reducing the pain to "4/10" when he takes over-the-counter Tylenol. R. 336. Dr. Boone's physical examination noted cervical and thoracolumbar ranges of motion within normal limits, though Smith experienced pain in his low back. R. 337–38. He diagnosed Smith with degenerative disc changes in the lumbar spine and possibly in the thoracic spine, with subjective burning. R. 338. Dr. Boone gave the opinion that Smith can lift twenty pounds occasionally and ten pounds frequently, can walk for two hours and can stand for six hours in an eight-hour workday, and may need stretching breaks more frequently than every two hours. R. 338–39. The ALJ gave partial weight to Dr. Boone's opinion to the extent that it is consistent with and supports the RFC. R. 28.

The court recognizes that the ALJ's assigned weight to Dr. Boone's opinion is circular. The Fourth Circuit Court of Appeals has admonished comparing a claimant's credibility to the RFC instead of the other evidence of record. See Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015). The same critique arguably applies here; the ALJ should compare the opinions against the evidence of record and not the claimant's ability to work. However, the ALJ's circular explanation does not prevent meaningful review of whether Smith needs unscheduled breaks throughout the day. Dr. Boone wrote Smith "may need stretching breaks more frequently than every two hours in order to alleviate some of the back pain" and clarified that "he may need breaks more frequently than every two hours in order to just stand up and stretch." R. 338. Dr. Boone's conclusions do not support Smith's suggestion that unscheduled breaks require lying down or leaving his station; on the contrary, Dr. Boone seems to suggest that Smith only needs to be able to stand up and stretch in place. Moreover, other than Dr. Wortley's opinion that received no weight and Smith's testimony, no other evidence in the record supports requiring

9

unscheduled breaks that would take him away from his station and require a specific restriction.

Smith lastly contests the ALJ's decision to give considerable weight to Dr. Surrusco's opinion. Dr. Surrusco reviewed Smith's records on December 29, 2011 and found that Smith's DDD and disorder of muscle, ligament, and fascia limited Smith to lifting up to twenty pounds occasionally and ten pounds frequently, standing or walking for two hours in an eight-hour workday, sitting for six hours in a workday, and postural and environmental limitations. R. 86–88. Smith alleges that Dr. Surrusco's opinion is not accurate because he did not review the full record, specifically his last two visits with Dr. Wortley in January and August 2012. The treatment records from these two visits noted radiating pain and numbness, pain-related depression, abnormal gait and tenderness, and an "uncomfortable" appearance. R. 381–84. Dr. Wortley administered trigger point injections on both visits. R. 381, 384. The additional treatment records largely reflect information already available in records reviewed by Dr. Surrusco. The only notable differences in the two records from 2012 were Smith's pain-related depression and trigger point injection treatments. Dr. Surrusco may not have been aware of Smith's depression, but that would not have affected his physical RFC or DDD-related limitations; the trigger point injections also likely would not have changed his recommendations because such injections are conservative in nature. Dr. Surrusco's opinion still deserves considerable weight despite later records.

Substantial evidence ultimately supports the ALJ's evaluations of the medical opinions. His explanations for the assigned weights may have been minimal, but the record reflects the physical examinations of Smith did not reveal significant functional limitations. Similarly, Smith only received conservative treatment for his condition. Claimants disabled by DDD generally show more extensive and intensive treatment such as surgery, or at least consider it as an option with their doctors. Smith only has explored relatively conservative treatment options

10

such as trigger point injections and medications. Therefore, I find that substantial evidence supports the ALJ's decision regarding the weight given to the medical sources, and remand is not warranted on this ground.

## Credibility

Smith also contends that the ALJ failed to properly consider his credibility and pain complaints. Smith argues that his lack of medical treatment should not have been considered given his financial barriers to treatment, his examinations with Dr. Wortley did not indicate benign findings, and his daily activities did not amount to those equivalent to full-time work. Smith also notes that Dr. Wortley did not consider him a malingerer and the record supports his complaints of pain. Smith's arguments consist of nothing more than facial disagreements with the ALJ's conclusions.

After a thorough review of Smith's treatment records and allegations of disability, the ALJ did not find Smith fully credible based on the fact that his clinical findings only showed limited abnormalities, his treatment has been conservative and unremarkable, he has gaps in treatment, he did not have any emergency room visits, he did not pursue or require more significant treatment, he worked through the third quarter of 2011, and his activity levels were greater at times (though never substantial gainful activity). R. 27.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Smith's subjective allegations of disabling impairments and pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Smith met his burden of proving that he suffers from an underlying impairment that is reasonably expected to produce his claimed symptoms. See Craig v. Chater, 76 F.3d 585, 592–

11

93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Smith's ability to work. Id. at 594–95.

In this case, the ALJ recognized that Smith suffers from severe impairments that cause him to experience limitations. The issue is not whether Smith has limitations, but whether those limitations are so severe as to be disabling. The ALJ found that Smith's statements regarding disabling limitations and pain are not entirely credible because they are not supported by the objective medical evidence, his treatment history, and his reported daily activities. R. 27. The ALJ included a detailed analysis of Smith's treatment records in his opinion in support of this conclusion. R. 23–28.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). "The ALJ… is not required to accept a claimant's testimony about her symptoms at face value; rather he is to weigh such testimony along with all of the evidence, including not only the objective medical evidence, but statements and other information provided by physicians or psychologists and other persons about her symptoms and how they affect her and any other relevant evidence in the case record." Meadows v. Astrue, No. 5:11CV00063, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (citing SSR 86-7p). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edelco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the record as a whole, I find that substantial evidence provided by the medical opinions, the treatment records, and Smith's testimony supports the ALJ's determination that his testimony is not fully credible, and that Smith is capable of performing the range of sedentary work set forth in the ALJ's opinion. The medical record demonstrates that Smith suffers from DDD, but lacks the severity in treatment or doctor-recommended limitations to support his allegations of pain and functional limitation. Dr. Wortley's examinations show some abnormal findings, but not to the extent of Smith's alleged functional limitations. Notably, Smith generally does not dispute the evidence cited by the ALJ in support of his credibility finding. Instead, Smith contends that the treatment records do not accurately reflect his disabling pain and that his daily activities can still be consistent with his allegations of disability. This is no basis for remand. Smith's daily activities–both with assistance and without–bear on his ability to function in a vocational setting and may properly be considered by an ALJ. See 20 C.F.R. §§ 404.1529(c)(3)(i), 404.1572(c). Although the court is sympathetic to Smith's argument that his finances limited his ability to seek treatment, the ALJ and the court ultimately must form a decision based on the record before it; moreover, the ALJ's credibility determination was based on several considerations beyond gaps in treatment and the frequency of medical appointments. Furthermore, the ALJ gave several other reasons to doubt Smith's credibility, including variations in Smith's testimony about when he stopped working. R. 27; see also R. 320 ("The [patient] is transported from room 7 to the lobby. The [patient] continued to report pain in his back. Once the patient was taken to the outside before the reporter could lock the wheelchair the [patient] stood up and ran to an awaiting car.").

The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So

long as this standard–defined as more than a mere scintilla but perhaps somewhat less than a preponderance–is met, I cannot reverse the ALJ. See Craig, 76 F.3d at 589. Substantial evidence ultimately supports the ALJ's credibility findings.

## **CONCLUSION**

In this civil action, the court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence. Substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Smith is totally free from pain and distress. The objective medical record simply fails to document during the relevant period the existence of conditions that would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Smith's claim for benefits and in determining that his degenerative disc disease would not prevent him from performing any work. Substantial evidence supports the ALJ's decision on all grounds. For the foregoing reasons, the Commissioner's motion for summary judgment is **GRANTED** and Smith's motion for summary judgment is **DENIED**.

Enter: September 28, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge